# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ADAM TIJERINA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO: 5:22-cv-00928-XR |
| | § | |
| NATIONAL DEBT RELIEF, LLC, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S ORIGINAL COUNTERCLAIM
## AGAINST PLAINTIFF ADAM TIJERINA

 National Debt Relief, LLC, ("NDR") Defendant in the above-captioned cause, files this Counterclaim against Adam Tijerina, Plaintiff in the above-captioned cause, and in support show as follows:

## I.
## NATURE OF THE ACTION

 1. NDR brings this Counterclaim based on Tijerina's recently discovered fraudulent actions and breach of the Severance Agreement entered into between the parties on June 18, 2021 (the "Severance Agreement").  NDR recently learned that Tijerina fraudulently induced NDR to enter into the Severance Agreement with Tijerina which Tijerina subsequently breached by bringing suit against Defendant. As a result, NDR has incurred the expense of paying Tijerina under the Severance Agreement and the expense of defending this wholly frivolous lawsuit.

## II.
## PARTIES

 2. NDR is a foreign limited liability company incorporated under the laws of New York.

3.      In his Original Complaint, Tijerina states he is a resident of Bexar County, Texas. ECF No. 1 ¶ 8.

## III.
## JURISDICTION & VENUE

4.      This Court has original subject-matter jurisdiction over Tijerina's FLSA claims against NDR as set forth in his Original Complaint because they arise under federal law. 28 U.S.C. § 1331. This Court has supplemental subject-matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367(a) because this Counterclaim is so related to Tijerina's FLSA claims that together they form part of the same case or controversy for purposes of Article III of the United States Constitution.  The Court has diversity jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.  Specifically, Tijerina is a citizen of Texas and NDR is a citizen of New York and Florida because its members are citizens of New York and Florida.

5.      This Court has personal jurisdiction over Tijerina, who admits he is a resident of this district and division and has previously appeared before this Court as Plaintiff in the above-captioned cause.

6.      The Court has personal jurisdiction over the NDR with respect to this Counterclaim because the Counterclaim arises out of NDR's contacts with the forum state and therefore the Court may exercise specific jurisdiction over NDR with respect to this Counterclaim.

7.      Venue is proper in this Court because a substantial part of the events or omissions giving rise to this Counterclaim occurred in this district and in this division. 28 U.S.C. § 1391(b)(2).

## IV.
## FACTS

8.     Plaintiff Adam Tijerina provided marketing services from time to time to NDR from June 2014 until June 2021, at which time his relationship with NDR was severed. As part of the service he provided to NDR, for which he billed NDR at an hourly rate, Tijerina purchased and set up multiple domain names and acquired other intellectual property on NDR's behalf (hereinafter the "IP Assets").

9.     The IP Assets were intended for NDR's sole, beneficial, and commercial use, and were material to its business.

10.     In or about June 2021, at or near the end of its relationship with him, NDR discovered that Tijerina had acquired the IP Assets in his personal name, rather than in NDR's name, and that Tijerina, therefore, personally owned those assets.  In addition to having personal ownership of the IP Assets, Tijerina had not provided NDR any passwords or other information necessary to operate or access the property without his assistance or involvement.

11.     To obtain ownership and control over the IP Assets, NDR entered into a written agreement with Tijerina (hereinafter the "Severance Agreement") whereby, *inter alia*, Tijerina transferred all ownership, right, and title to the IP Assets to NDR.

12.     NDR and Tijerina negotiated the terms of the Severance Agreement.  As part of the negotiation, Tijerina requested that NDR increase the consideration it was to pay him under the Severance Agreement to compensate him for allegedly unpaid overtime work.

13.     Although NDR disagreed that Tijerina was entitled to overtime compensation, it agreed, at Tijerina's request, to increase the amount it paid him under the Severance Agreement by more than $29,000 (hereinafter the "Additional Consideration").  The parties executed the Severance Agreement on June 18, 2021, and NDR thereafter paid to Tijerina the $145,600 in

total consideration (hereinafter the "Total Consideration"), which included the Additional Consideration that the parties negotiated to fully compensate Tijerina for his overtime claim.

14.      In exchange for the amounts NDR agreed to pay Tijerina under the Severance Agreement, Tijerina agreed, *inter alia*, to release certain causes of action and claims against NDR.  He also represented in the Severance Agreement that he had been paid or had received all compensation and benefits due to him by virtue of his working relationship and the cessation of his working relationship with NDR, including, without limitation, all compensation for hours worked and services provided:

> Receipt of All Remuneration.  As of this Separation Date, Tijerina has been paid or has received all compensation and benefits due to him by virtue of his working relationship and the cessation of his working relationship with NDR, including without limitation all compensation for hours worked and service provided.

Severance Agreement, ¶ 11.

15.      Tijerina also agreed, in the Severance Agreement, to release any FLSA claims that he might have against NDR.  He further agreed that it would be a default under the Severance Agreement to commence a case, proceeding, or other action against NDR arising out of or relating to Tijerina's working relationship with NDR or any of the released claims.

> Default.   The occurrence of one or more of the following shall constitute a Default under this Agreement:
>
> Tijerina commences a case, proceeding or other action against any of the NDR Entities arising out of or relating to his working relationship with NDR, asserting any Released Claims.

Severance Agreement, ¶¶ 7 and 12.

16.      Tijerina's representations, promises, and releases, as contained in the Severance Agreement, materially induced NDR to agree to and execute the Severance Agreement and to pay Tijerina the Total Consideration, including the Additional Consideration.

17.     NDR would not have executed the Severance Agreement or agreed to pay the Total Consideration or the Additional Consideration in the absence of Tijerina's representations, promises, and releases as contained in the Severance Agreement.

18.     NDR made all payments due under the Severance Agreement and fully performed all of its obligations under same.

19.     Despite the plain language of the Severance Agreement, including the representations, release and conditions of default found therein, Tijerina filed this suit alleging violation of the Fair Labor Standards Act on August 26, 2022, just two months after he received his final payment under the Severance Agreement.

20.     Tijerina gave his deposition in the above captioned lawsuit on February 15, 2023. In his deposition, when questioned about his release of his claims for overtime under the Fair Labor Standards Act, Tijerina unequivocally testified (with his counsel present and without objection) that he had two different attorneys review the terms of the Severance Agreement and advise him, prior to him signing, that his release of his FLSA claim was supposedly ineffective.[1] Tijerina further testified his attorney told him "[w]hy don't you sign the agreement, get paid the consideration, and then pursue the overtime afterwards?"  The attorney further told Tijerina, "[i]f we want to, we can pursue that because you can't waive that right."  Believing that the release was ineffective, Tijerina never informed NDR prior to execution of the Agreement that despite negotiating and receiving a payment for overtime, he intended to pursue a subsequent lawsuit against the Company, and otherwise made the representations set out in Paragraph 10 above. Instead, Tijerina testified that after receiving this advice, he signed the Severance Agreement,

---

[1] Tijerina additionally testified at his deposition that he charged expenses he incurred and other non-work activities to NDR as hours worked. Thus, the hours Tijerina charged to NDR necessarily do not represent the actual number of hours that Tijerina worked.  Tijerina repeatedly testified that he could not recall when he did this and for how many hours, making it impossible to calculate how many hours Tijerina allegedly worked per week.

believing it to be ineffective as to his claims for overtime, and subsequently bought suit alleging he was due overtime under the FLSA.

21.     Through his fraudulent representation that he would not bring a case against NDR arising out of or relating to his working relationship with NDR or any of the released claims and his failure to disclose that he did not believe the Severance Agreement was effective as to his claims under the FLSA, Tijerina fraudulently induced NDR to enter into the Severance Agreement and fully pay him pursuant to the terms of the Severance Agreement.

22.     Because of Tijerina's fraudulent inducement, failure to disclosure and breach of the Severance Agreement, NDR was harmed— NDR paid Tijerina a sum that he was not entitled to, and is now being forced to spend time and money (including attorneys' fees) defending against this frivolous lawsuit Tijerina brought for a claim he negotiated an additional payment for and in turn released.

**V.**
**CAUSES OF ACTION**

**COUNT ONE: COMMON LAW FRAUD, FRAUD IN THE INDUCEMENT**
**AND FRAUD BY NONDISCLOSURE UNDER TEXAS LAW**

23.     NDR incorporates the foregoing paragraphs herein by reference.

24.     Tijerina represented that he was releasing his claims under the FLSA and would not file suit against NDR for any claim arising out of or relating to his working relationship with NDR or any of the released claims when he agreed to and executed the Severance Agreement. Tijerina made this false representation knowingly, with the intent to defraud NDR. Specifically, Tijerina consulted an attorney and was advised that he was not effectively releasing his FLSA overtime claim even if he executed the agreement, and that he should execute the agreement with the intent not to comply with its terms, and only after accepting the consideration, bring an additional lawsuit later.  Tijerina thereafter knowingly negotiated an extra payment due to the

hours he worked that exceeded 40 hours a week, accepted the full amount of consideration from NDR while planning to sue NDR in breach of the express terms of the Severance Agreement once Tijerina received the final payment. Tijerina did not disclosure this information to NDR at anytime prior to or at the execution of the Severance Agreement.

25.     The false representation was material. NDR would not have entered into the Severance Agreement but for Tijerina's false representation and failure to disclose. The release of all claims and agreement not to sue for any claim arising out of or relating to Tijerina's working relationship with NDR was a key, material term in NDR agreeing to execute the Severance Agreement.

26.     When Tijerina executed the Severance Agreement and represented to NDR he was releasing his claims and would not bring suit against NDR for any released claim arising out of or relating to his working relationship with NDR, he did so knowing that such representation was false as evidenced by his testimony in this suit and the advice he testified that he received from counsel.

27.     Tijerina made this false representation to NDR with the intent that it act on it and execute the Severance Agreement and pay him pursuant to same.

28.     NDR in fact did execute the Severance Agreement and fully perform pursuant to its terms.

29.     Tijerina then filed the instant lawsuit for violations of the FLSA, both a released claim and one arising out of or relating to his working relationship with NDR, despite executing the Severance Agreement that he fraudulently induced NDR to pay him under.

30.     Tijerina's fraud thus has harmed NDR because it paid Tijerina under the terms of the Severance Agreement and because NDR has been injured in that it must now defend against

a lawsuit based on claims that are part of the release therein and that Tijerina had no intention of ever releasing.

## COUNT TWO: BREACH OF CONTRACT UNDER TEXAS LAW

31.     NDR incorporates the foregoing paragraphs herein by reference.

32.     The parties entered into a valid binding contract, the Severance Agreement, on June 18, 2021.

33.     NDR fully performed all of its obligations under the Severance Agreement and paid Tijerina in full the $145,600 due Tijerina under the Severance Agreement.

34.     Tijerina breached paragraphs 7, 11 and 12 of the Severance Agreement when he filed the present lawsuit.  Tijerina has sustained actual damages, including the severance amount paid to Tijerina and NDR's costs of defense against Tijerina's frivolous lawsuit.

## COUNT THREE: BREACH OF THE DUTY OF LOYALTY UNER TEXAS LAW

35.     NDR incorporates the foregoing paragraphs herein by reference.

36.     Pleading in the alternative, a fiduciary relationship existed between Tijerina and NDR.  Specifically, Texas recognizes that the agent principal relationship gives rise to a fiduciary duty.  An agent has a duty to deal openly with the employer, to fully disclose to the employer information about matters affecting the company's business and a duty to deal fairly with the principal in all transactions between them.

37.     Tijerina breached that duty when he purchased and operated multiple domain names and had acquired other intellectual property for NDR under his own name and ownership and not NDR's ownership and failed to provide NDR any passwords or other necessary information to operate or access the property.  The breach resulted in injury to NDR and a benefit to Tijerina in the amount of the severance agreement payment.

## COUNT FOUR: UNJUST ENRICHMENT UNDER TEXAS LAW

38.    NDR incorporates the foregoing paragraphs herein by reference.

39.    Tijerina procured the payment of $145,600 from NDR through fraud. Tijerina thereby obtained a benefit to which he was not entitled and was unjustly enriched at NDR's expense.

40.    NDR is entitled to restitution of the fraudulently received payment made to Tijerina in an amount to be determined at trial.

## VI.
## JURY DEMAND

NDR hereby demands trial by jury on the claims presented in this Counterclaim.

## VII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, NDR prays this Court award it the following:

a)  actual damages, including the severance amount paid to Tijerina and NDR's costs of defense against Tijerina's frivolous lawsuit;

b)  exemplary damages based on clear and convincing evidence showing that Tijerina committed fraud;

c)  restitution damages under NDR's equitable causes of action;

d)  attorneys' fees;

e)  pre- and post-judgment interest;

f)  court costs; and

g)  all other relief, in law or at equity, to which NDR may show itself justly entitled.

Date filed:  April 4, 2023

Respectfully submitted,

*Of Counsel*:

Katie Banks
State Bar No. 24092114
Fed. ID No.  2516169
LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)
kbanks@littler.com

/s/ David B. Jordan
David B. Jordan (Attorney-in-Charge)
State Bar No. 24032603
Fed. ID No. 40416
LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)
djordan@littler.com

**ATTORNEY FOR DEFENDANT
NATIONAL DEBT RELIEF, LLC**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 4th day of April 2023, a true and correct copy of the foregoing Defendant's Original Answer and Affirmative and Other Defenses to Plaintiff's Complaint was filed via CM/ECF, and served via the Court's e-filing system, email, and/or United States mail to the individuals listed below:

Colby Qualls
Josh Sanford
SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211

**ATTORNEYS FOR PLAINTIFF**

/s/ David B. Jordan
David B. Jordan